# 2019 WI App 57

## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2018AP1845-CR |

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

AMY JOAN ZAHURONES,

DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | September 10, 2019 |
| Submitted on Briefs: | August 6, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Cary Bloodworth*, assistant state public defender of Madison. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joshua L. Kaul*, attorney general, and *Courtney K. Lanz*, assistant attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

September 10, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1845-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2015CF115**

IN COURT OF APPEALS

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

AMY JOAN ZAHURONES,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 STARK, P.J. Amy Zahurones pled no contest to four counts arising from a single course of conduct. On three of the counts to which Zahurones pled, the circuit court withheld sentence and imposed two years' probation. The court

deferred entry of judgment on the remaining count—Count 2—pending the successful completion of Zahurones' probation. However, following multiple probation holds, both Zahurones' probation and the deferred entry of judgment agreement were revoked, and Zahurones received concurrent sentences on all four counts.

¶2 Zahurones now appeals, arguing the circuit court erred by granting her insufficient sentence credit against her sentence on Count 2. Specifically, Zahurones argues she is entitled to credit on Count 2 for time she spent in custody on probation holds on the other counts. We agree with Zahurones that the time she spent in custody on the probation holds was "in connection with" the course of conduct for which sentence was imposed on Count 2. Under WIS. STAT. § 973.155(1)(a) (2017-18),[1] Zahurones was therefore entitled to sentence credit for those time periods against her sentence on Count 2. Accordingly, we reverse that portion of the judgment of conviction granting Zahurones only four days of sentence credit on Count 2 and that portion of the postconviction order denying Zahurones' request for additional sentence credit on that count. We remand for the circuit court to modify the judgment of conviction to grant Zahurones a total of 276 days of sentence credit against her sentence on Count 2.

## BACKGROUND

¶3 The criminal complaint in this case alleges that on July 3, 2015, police entered a house in which Zahurones was living and found Zahurones in a

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

back bedroom. In the same room, officers also found several clonazepam tablets, a pill bottle containing multiple types of prescription medication, a pipe containing burnt marijuana residue, and drug paraphernalia related to methamphetamine use. Zahurones refused to follow the officers' instructions and was placed under arrest. She continued to be uncooperative after her arrest, and the officers were ultimately required to pick her up and carry her to a squad car. Zahurones' two-year-old daughter was among the individuals in the residence at the time of her arrest. A social worker subsequently transported the child to a hospital where she tested positive for methamphetamine.

¶4 Based on the events described above, the State charged Zahurones with the following six counts, each as a repeater:

- Count 1: possession of drug paraphernalia;

- Count 2: physical abuse of a child;

- Count 3: possession of a controlled substance;

- Count 4: possession of an illegally obtained prescription drug;

- Count 5: resisting an officer; and

- Count 6: possession of drug paraphernalia.

Zahurones spent four days in custody on these charges before being released on cash bond.

¶5 During a plea and sentencing hearing on September 23, 2015, Zahurones pled no contest to Counts 1, 2, 3, and 5, pursuant to a plea agreement, and Counts 4 and 6 were dismissed and read in. The parties jointly recommended

that the circuit court withhold sentence on Counts 1, 3, and 5 and place Zahurones on two years of concurrent probation on each of those counts. The parties further recommended that the court defer entry of judgment on Count 2 for two years pursuant to a deferred entry of judgment agreement (DEJ). As a condition of that agreement, Zahurones was required to "successfully complete probation on Counts 1, 3 and 5." The court accepted Zahurones' pleas and adopted the parties' joint sentencing recommendation. In addition, the court converted Zahurones' original cash bond to a signature bond, explaining that Zahurones remained on bond with respect to Count 2 because judgment on that count was deferred.

¶6     On September 30, 2015—seven days after the plea and sentencing hearing—Zahurones was taken into custody on a probation hold for Counts 1, 3, and 5. She remained in custody on that probation hold for fifty-five days. Zahurones later spent seven additional days in custody on a probation hold for Counts 1, 3, and 5, beginning on May 11, 2016. On January 11, 2017, the State filed a motion to revoke Zahurones' DEJ on Count 2. The stated basis for the motion was that Zahurones had "failed to comply with all terms of the [DEJ], specifically [Zahurones] has failed to complete probation."

¶7     On February 22, 2017, Zahurones was once again placed in custody on a probation hold for Counts 1, 3, and 5. Her probation was subsequently revoked on May 24, 2017. Thereafter, she remained in custody pending her sentencing after revocation on Counts 1, 3, and 5, and pending the revocation of the DEJ on Count 2. That third period of custody lasted 210 days.

¶8     The circuit court held a sentencing after revocation hearing on September 20, 2017. During the hearing, the court also addressed the State's motion for revocation of the DEJ. The court concluded Zahurones had breached

4

the DEJ by failing to successfully complete her probation on Counts 1, 3, and 5. The court therefore proceeded to sentence Zahurones on all four of the counts to which she had previously pled no contest. After considering the parties' arguments, the court imposed the following concurrent sentences: thirty days in jail on Count 1; two years of initial confinement and two years of extended supervision on Count 2; thirty days in jail on Count 3; and nine months in jail on Count 5. The court granted Zahurones 285 days of sentence credit against her sentences on Counts 1, 3, and 5, but it did not grant any credit against her sentence on Count 2.

¶9 Zahurones subsequently moved for postconviction relief, seeking sentence credit adjustments in this case and two others. As relevant to this appeal, Zahurones conceded that she was entitled to only 276 days of sentence credit on Counts 1, 3, and 5—down from 285 days. She argued, however, that she was also entitled to 276 days of credit against her sentence on Count 2. That amount was comprised of the four-day time period during which Zahurones was in custody before being released on cash bond, plus the fifty-five day, seven-day, and 210-day periods when Zahurones was in custody on probation holds for Counts 1, 3, and 5.

¶10 Following a hearing, the circuit court adjusted Zahurones' sentence credit on Counts 1, 3, and 5 to 276 days[2] and granted her four days of credit against her sentence on Count 2. However, the court declined to grant Zahurones the 272 additional days of credit she had requested on that count. The court

---

[2] The issue of Zahurones' sentence credit on Counts 1, 3, and 5 was technically moot, as Zahurones had already completed her sentences on those counts.

agreed with the State that Zahurones was not entitled to that credit because the probation holds that resulted in the 272 days of presentence custody were related only to Counts 1, 3, and 5, not Count 2. The court also observed that Zahurones had already received the benefit of the DEJ on Count 2, and permitting her to receive the requested sentence credit would therefore be tantamount to allowing her to "have her cake and eat it too."

¶11    After issuing its oral ruling, the circuit court entered a written order granting in part and denying in part Zahurones' postconviction motion. The court also modified Zahurones' judgment of conviction on Count 2 to reflect that she was entitled to four days of sentence credit on that count. Zahurones now appeals, arguing the court erred by declining to grant her 272 additional days of sentence credit on Count 2.

## DISCUSSION

¶12    The application of the sentence credit statute, WIS. STAT. § 973.155, to a particular set of facts presents a question of law that we review independently. *See* ***State v. Hintz***, 2007 WI App 113, ¶5, 300 Wis. 2d 583, 731 N.W.2d 646. In so doing, however, we will uphold any factual findings made by the circuit court unless they are clearly erroneous. ***Id.***

¶13    The purpose of WIS. STAT. § 973.155 is to prevent a defendant from serving more time than his or her sentence calls for. ***State v. Johnson***, 2009 WI 57, ¶31, 318 Wis. 2d 21, 767 N.W.2d 207 (hereinafter, ***Elandis Johnson***). To that end, the statute provides that a convicted offender "shall be given credit toward the

service of his or her sentence for all days spent in custody[3] in connection with the course of conduct for which sentence was imposed." Sec. 973.155(1)(a). An offender seeking sentence credit must therefore establish: (1) that he or she was "in custody" during the relevant time period; and (2) that the custody was "in connection with the course of conduct for which sentence was imposed." *Elandis Johnson*, 318 Wis. 2d 21, ¶27 (quoting § 973.155(1)(a)).

¶14    In this case, it is undisputed that Zahurones was "in custody," for purposes of WIS. STAT. § 973.155(1)(a), during each of the three time periods for which she is now seeking sentence credit. The disputed issue is whether her custody during those time periods was "in connection with" the course of conduct for which sentence was imposed on Count 2. To qualify as time spent "in connection with" the course of conduct giving rise to a sentence, a period of custody must be "factually connected with the course of conduct for which sentence was imposed." *Elandis Johnson*, 318 Wis. 2d 21, ¶3. "[A] mere procedural connection will not suffice." *Id.*, ¶33. The term "course of conduct," in turn, refers to the specific offense or acts embodied in the charge for which the defendant is being sentenced. *See* **State v. Tuescher**, 226 Wis. 2d 465, 471-72, 595 N.W.2d 443 (Ct. App. 1999).

---

[3] The statute specifies that "actual days in custody" includes confinement related to an offense for which the defendant is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs while the defendant is awaiting trial, is being tried, or is awaiting the imposition of sentence after trial. WIS. STAT. § 973.155(1)(a). Such confinement includes "custody of the convicted offender which is in whole or in part the result of a probation, extended supervision or parole hold … placed upon the person for the same course of conduct as that resulting in the new conviction." Sec. 973.155(1)(b).

¶15    Here, Zahurones seeks credit against her sentence on Count 2 for three time periods during which she was in custody on probation holds for Counts 1, 3, and 5.  We agree that Zahurones is entitled to credit for those periods of custody because they were factually connected with the course of conduct for which she was sentenced on Count 2.  Critically, Counts 1, 2, 3, and 5 each arose from the same course of conduct.  Namely, on July 3, 2015, police entered Zahurones' home and found drugs and drug paraphernalia in her possession; Zahurones' child was removed from the home and tested positive for methamphetamine, to which she was likely exposed due to Zahurones' drug use and possession; and Zahurones refused to follow the officers' instructions and resisted arrest.  The circuit court acknowledged the factual connection between Zahurones' custody during the probation holds and the course of conduct underlying Count 2, stating, "There is no doubt that she [was] in custody and was in custody for a course of conduct related to all of the charges."  That single course of conduct was the reason Zahurones was in jail on the probation holds for Counts 1, 3, and 5, and it was also the reason she was sentenced on Count 2.

¶16    The factual connection between Zahurones' custody during the probation holds and the course of conduct underlying her sentence on Count 2 is further strengthened by the manner in which her probation and DEJ were structured.  Although Zahurones was technically on probation only for Counts 1, 3, and 5 at the time the holds were placed, the terms of her probation were intertwined with the DEJ on Count 2.  Specifically, the DEJ required Zahurones to "successfully complete probation on Counts 1, 3 and 5."  Thus, Zahurones' behavior while on probation directly affected her ability to complete the DEJ.  Moreover, when revoking the DEJ and sentencing Zahurones on Count 2, the circuit court expressly considered the fact that Zahurones had failed to

successfully complete the DEJ because her probation on the other counts had been revoked.

¶17    In addition, despite the fact that Zahurones was on probation only for Counts 1, 3, and 5—i.e., the drug-related offenses and resisting an officer—she was required as a condition of her probation on those counts to "[c]ooperat[e] with the Langlade County Department of Social Services with regard to [her] children." That condition was clearly directed at Count 2—the child abuse charge. Zahurones' success on probation therefore depended, at least in part, on her efforts to address issues related to the child abuse charge, while her successful completion of the DEJ on the child abuse charge depended in part on her behavior during probation. These interconnections between Zahurones' probation on Counts 1, 3, and 5 and the DEJ on Count 2 further support a conclusion that Zahurones' custody during the probation holds was factually connected with the course of conduct underlying her sentence on Count 2.

¶18    The State argues that Zahurones' custody during the probation holds was not "in connection with" the course of conduct for which she was sentenced on Count 2 because Zahurones was technically "free" on a signature bond on that count during the time periods when she was in custody on the probation holds. The State contends that the issuing of a signature bond necessarily "severs any connection between a defendant's custody and the course of conduct for which the person was sentenced." The State's argument in this regard is unpersuasive, however, because both this court and the Wisconsin Supreme Court have upheld sentence credit for periods of custody during which the defendants were technically "free" on bond on the charges for which they were ultimately sentenced.

9

¶19    For instance, in *State v. Floyd*, 2000 WI 14, ¶2, 232 Wis. 2d 767, 606 N.W.2d 155, *abrogated on other grounds by* *State v. Straszkowski*, 2008 WI 65, 310 Wis. 2d 259, 750 N.W.2d 835, the defendant was initially charged with various offenses, including recklessly endangering safety while armed with a dangerous weapon.  He was released on a personal recognizance bond.  *Id.*  While free on bond, the defendant was arrested for armed robbery.  *Id.*, ¶3.  The defendant was unable to post cash bond on the armed robbery charge, and so he remained in custody on that charge from the date of his arrest until the date of sentencing.  *Id.*  Both cases were subsequently resolved pursuant to a global plea agreement.  *Id.*, ¶4.  The defendant entered guilty pleas to the reckless endangerment charge in the first case and a single charge of felony bail jumping in the second case, and the remaining charges—including the armed robbery count—were dismissed and read in at sentencing.  *Id.*

¶20    On appeal, our supreme court reasoned that because the armed robbery charge was considered at the defendant's sentencing on the reckless endangerment charge, it was factually connected with the course of conduct for which sentence was imposed on the reckless endangerment charge.  *Id.*, ¶¶18, 32. The defendant was therefore entitled to credit against his sentence on the reckless endangerment charge for the time he spent in presentence custody on the armed robbery charge.  *Id.*, ¶¶1, 32.  Notably, the defendant was entitled to that credit even though he was technically "free" on bond on the reckless endangerment charge during the time he was in presentence custody on the armed robbery charge.  *See id.*, ¶3.

¶21    In *Hintz*, the defendant participated in two burglaries while on extended supervision for a fifth-offense operating while intoxicated (OWI) conviction.  *Hintz*, 300 Wis. 2d 583, ¶¶2-3.  An extended supervision hold was

10

placed on the defendant due, in part, to his participation in the burglaries. *Id.*, ¶¶3, 9. The defendant was charged in connection with the burglaries, and although he remained in custody on the extended supervision hold, he was technically "free" on a signature bond for the burglary charges. *Id.*, ¶3. After the defendant was sentenced on the burglary charges, he sought credit against those sentences for the time he was in custody on the extended supervision hold for the OWI conviction. *Id.*, ¶4.

¶22 We concluded the defendant was entitled to that credit because the extended supervision hold was "at least in part due to the conduct resulting in" the burglary convictions. *Id.*, ¶8. As such, the defendant's custody during the hold was "in connection with" the course of conduct for which he was sentenced on the burglary charges. *See* WIS. STAT. § 973.155(1)(a). We specifically rejected the State's argument that the defendant "was not in custody in connection with the burglary [during the extended supervision hold] because he was released on signature bond with respect to the [burglary] charges" during that time period. *Hintz*, 300 Wis. 2d 583, ¶11.[4]

---

[4] The State asserts that *State v. Hintz*, 2007 WI App 113, 300 Wis. 2d 583, 731 N.W.2d 646, was "arguably wrongly decided." However, as the State concedes, this court has no power to overrule *Hintz*. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) ("[T]he court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals.").

(continued)

¶23    The State cites three cases in support of its position that Zahurones' signature bond severed any factual connection between her custody during the probation holds and the course of conduct for which she was sentenced on Count 2: *State v. Beiersdorf*, 208 Wis. 2d 492, 561 N.W.2d 749 (Ct. App. 1997); *State v. Johnson*, 2007 WI 107, 304 Wis. 2d 318, 735 N.W.2d 505 (hereinafter, *Marcus Johnson*); and *Elandis Johnson*.   However, each of those cases is distinguishable.

¶24    Beiersdorf was free on bond on a second-degree sexual assault charge when he was charged with bail jumping.  *Beiersdorf*, 208 Wis. 2d at 494-95.  He remained in custody because he could not post cash bail on the bail jumping charge, even though he was technically "free" on bond on the sexual assault charge.  *Id.* at 495.  Beiersdorf later sought credit against his sentence on the sexual assault charge for the time he was in custody between his arrest and sentencing on the bail jumping charge.  *Id.*  We concluded Beiersdorf was not entitled to that credit because he had "posted a personal recognizance bond on the felony sexual assault charge and remained on that bond until his sentencing, and because he was in custody on cash bail only on the subsequent bail jumping [charge]." *Id.* at 498.  We explained that, under these circumstances, "although in

---

In addition, the State argues *Hintz* is distinguishable because the circuit court in that case made "specific factual findings about the connection between the defendant's hold and the new criminal conduct for which the defendant was sentenced."  The State argues there were no "similar specific findings" in this case about a connection between Zahurones' probation holds and her sentence on Count 2.  However, the circuit court specifically found that there was "no doubt" Zahurones "was in custody for a course of conduct related to all of the charges" during the probation holds.  In other words, the court found that a factual connection existed between Zahurones' sentence on Count 2 and her custody during the probation holds, in that both the sentence and the custody arose from a single course of conduct.  The court's factual finding in that regard is not clearly erroneous.

rather obvious ways Beiersdorf's bail jumping was figuratively 'related to' his second-degree sexual assault, his 'custody' literally was not 'confinement related to' the sexual assault for purposes of sentence credit." ***Id.***

¶25 ***Beiersdorf*** is distinguishable because, in that case, the connection between the defendant's custody on the bail jumping charge and his sentence on the sexual assault charge was merely procedural in nature, rather than factual. The course of conduct that gave rise to the custody on the bail jumping charge was separate and distinct from the course of conduct that gave rise to the sexual assault charge. Here, in contrast, all four of the charges to which Zahurones pled arose from a single course of conduct. As such, Zahurones' custody during the probation holds on Counts 1, 3, and 5 was factually—not merely procedurally—connected to the course of conduct for which she was sentenced on Count 2.

¶26 ***Marcus Johnson*** and ***Elandis Johnson*** are distinguishable for much the same reason. In ***Marcus Johnson***, the defendant was in custody under a juvenile commitment order when he was charged with battery. ***Marcus Johnson***, 304 Wis. 2d 318, ¶¶11-12. The circuit court ordered a signature bond on the battery charge, but the defendant remained in custody under the juvenile commitment order. ***Id.***, ¶13. Our supreme court concluded the defendant was not entitled to credit against his battery sentence for the time he spent in custody under the juvenile commitment order while awaiting sentencing on the battery charge. ***Id.***, ¶81. Significantly, the defendant's presentence custody in ***Marcus Johnson*** arose from one course of conduct—the conduct underlying his juvenile commitment—and his sentence on the battery charge arose from a separate course of conduct. *See **id.*** (noting the circuit court's finding that the defendant would have remained in custody under the juvenile commitment order even if the battery had not occurred). Thus, there was no factual connection between the defendant's

presence custody and the separate course of conduct for which he was sentenced on the battery charge.

¶27 In *Elandis Johnson*, the defendant was "free on bond" in two 2004 cases when he was arrested in April 2005 for marijuana possession and bail jumping. *Elandis Johnson*, 318 Wis. 2d 21, ¶¶5-7. The defendant remained in custody for fifty days on those charges until he was able to post cash bond. *Id.*, ¶¶7-8 & n.9. The defendant was later sentenced in all three cases during a single hearing. *Id.*, ¶9. His sentences in the 2005 case were made concurrent with each other and with his sentence in the first 2004 case. *Id.*, ¶12. He received fifty days of sentence credit against his sentences in the 2005 case for the period of time in which he remained in custody because he was unable to post cash bond. *Id.*, ¶¶12, 14, 16. The defendant argued, however, that he was also entitled to credit for that time period against his sentence in the first 2004 case "because the sentence in the first 2004 case and the sentences in the 2005 case were imposed at the same time and were made concurrent with each other." *Id.*, ¶¶14-15. Our supreme court concluded the defendant was not entitled to the credit he sought because there was no "factual connection between the 50 days of presence custody in 2005 and the course of conduct for which the sentence in the first 2004 case was imposed." *Id.*, ¶49.

¶28 In *Beiersdorf*, *Marcus Johnson*, and *Elandis Johnson*, each defendant was on bond for one course of conduct while at the same time in custody related to a separate course of conduct. While the bond was the procedural mechanism by which each defendant became "free" as to the charges stemming from one course of conduct, the existence of that procedural mechanism was not dispositive for purposes of the sentence credit analysis. Instead, in each case the court analyzed whether there was a factual connection between the

relevant period of custody and the course of conduct for which the defendant was sentenced. No such factual connection existed in ***Beiersdorf***, ***Marcus Johnson***, and ***Elandis Johnson***, and, as a result, the defendants in those cases were not entitled to sentence credit. Conversely, for the reasons explained above, Zahurones' custody in this case during the probation holds on Counts 1, 3, and 5 was factually connected to the course of conduct for which she was sentenced on Count 2. As such, Zahurones is entitled to sentence credit on Count 2 for the time when she was in custody on the probation holds.

¶29 In closing, we again reiterate that the purpose of WIS. STAT. § 973.155 is to prevent a defendant from serving more time than his or her sentence calls for. *See **Elandis Johnson***, 318 Wis. 2d 21, ¶31. The statute's provisions are "mandatory," and a sentencing court must grant the defendant any credit to which he or she is entitled under the statute. ***State v. Carter***, 2010 WI 77, ¶51, 327 Wis. 2d 1, 785 N.W.2d 516. Thus, the circuit court erred in this case by denying Zahurones sentence credit based in part on the court's belief that Zahurones had already received the benefit of the DEJ on Count 2. Because Zahurones was entitled to sentence credit under the provisions of § 973.155, the court was required to grant her that credit, regardless of any equitable considerations that the court believed weighed against granting her sentence credit.

¶30 Moreover, we agree with Zahurones that under the circuit court's analysis, the DEJ did not actually benefit Zahurones but, instead, resulted in her serving more time than was called for by her sentence on Count 2. Had judgment on Count 2 not been deferred and had the court simply sentenced Zahurones to two years of initial confinement on that count at the outset, Zahurones would have gone directly to prison and served only two years of initial confinement on

Count 2. However, the combined effect of the DEJ and the circuit court's subsequent decision to deny sentence credit was to require Zahurones to serve two years of initial confinement on Count 2 in addition to the 272 days that she had already spent in presentence custody. We agree with Zahurones that this outcome—i.e., a defendant being forced to serve more time than her sentence calls for—is "precisely the result that WIS. STAT. § 973.155 is meant to prevent."

¶31 We therefore reverse that portion of the judgment of conviction granting Zahurones only four days of sentence credit on Count 2 and that portion of the postconviction order denying Zahurones' request for additional sentence credit on that count. We remand for the circuit court to modify the judgment of conviction to grant Zahurones 272 additional days of sentence credit against her sentence on Count 2, for a total of 276 days of credit.[5]

*By the Court.*—Judgment and order reversed in part and cause remanded with directions.

---

[5] Zahurones argues, in the alternative, that she is at least entitled to credit against her sentence on Count 2 for the 210 days she spent in custody awaiting sentencing on that count pending the revocation of the DEJ. We have already determined, for the reasons explained above, that Zahurones is entitled to credit for that 210-day time period. Accordingly, we need not address Zahurones' alternative argument. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).